## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

I4F LICENSING N.V.                  )
                                    )
      Plaintiff,                )          Civil Action No.:
                                    )
      v.                        )          _____
                                    )
SHANDONG     JIARUIHENG     NEW     )
MATERIALS  CO.,  LTD.  and  RICHIE'S )
GLASS LLC.                          )
                                    )
      Defendants.               )

### COMPLAINT

Plaintiff i4F Licensing N.V. ("i4F"), through its counsel, hereby alleges the following for its Complaint against Defendant Shandong Jiaruiheng New Materials Co., Ltd. and Richie's Glass LLC (collectively, "Defendants"):

1.      This is a civil action for the infringement of United States Patent No. 8,978,336, entitled "Floor Panel and Floor Covering Consisting of a Plurality of Such Floor Panels" (the '336 Patent"), United States Patent No. 10,267,046, entitled "Panel Interconnectable with Similar Panels for Forming a Covering" ("the '046 Patent", collectively with the '336 Patent, the "Locking Patents"), United States Patent No. 11,091,918, entitled "Covering Panel and Process of Producing Covering Panels" ("the '918 Patent"), United States Patent No. 11,794,396, entitled "Method of Producing a Glueless Dustless Composite Flooring Material System" ("the '396 Patent"), and United States Patent No. 12,427,753, entitled "Glueless Dustless Composite Flooring Material System." ("the '753 Patent", collectively, with the '918 and '396 Patents, the "Material Patents" and, collectively, with the '918 Patent, '396 Patents and the Locking Patents, the "Asserted Patents").

2.    Plaintiff i4F is a Belgian company having a principal place of business at Industriedijk 19, 2300 Turnhout, Belgium.

3.    Upon information and belief, Shandong Jiaruiheng New Materials Co., Ltd. ("JRH") is a Chinese corporation with a principal place of business at Room 2118, 21st Floor, Building 12, Xingguang International Financial Center, Liaocheng, Shandong, China who operates under the tradename "JRH Flooring".

4.    Upon information and belief, Defendant Richie's Glass LLC ("Richie's") is a New Jersey limited liability company with principal place of business at 1616 South Broad Street, Trenton, New Jersey 08610.

**PERSONAL JURISDICTION AND VENUE**

5.    This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 271 et seq.

6.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338 and 1367.

7.    This Court has personal jurisdiction over Defendants because Defendants have committed and continue to commit acts of infringement in this district, as explained in further detail below.

8.    Alternatively, this Court has personal jurisdiction over Defendant JRH under Fed. R. Civ. P. 4(k)(2) for at least the reasons that JRH has committed acts of infringement in the United States, is not subject to the jurisdiction in any state's courts of general jurisdiction and has purposefully directed its infringing activity at United States residents.

9.    Venue is proper under 28 U.S.C. §§ 1391 and 1400 because Defendant JRH is a foreign corporation and is subject to personal jurisdiction in this District due to its acts of infringement by way of at least its importation and sale of infringing product in this District, and

Defendant Richie's is organized under the laws of New Jersey, has a principle place of business in this district and has committed acts of infringement in this District.

10. In particular, and upon information and belief, Defendants have imported, sold, or offered to sell and continue to import, sell or offer to sell stone plastic composite (SPC) floor and wall covering panels or tiles, including SPC floor panels utilizing i4F's patented 3LTriple Lock and Click4U locking systems and/or the Lox locking system, marketed and licensed by i4F's competitor Vilox AB, (the "SPC Accused Products") in the United States.

11. Further, at least Defendant JRH imports, sells and offers to sell floor panels or tiles, regardless of material, that includes i4F's 3L TripleLock and Click4U locking systems (the "Locking Accused Products", collectively, with the SPC Accused Products, the "Accused Products").

## PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271

12. i4F repeats and re-alleges the averments contained in all preceding paragraphs of this Complaint as if fully stated herein.

13. i4F is a research and development company focused on the home improvement industry. i4F's patent portfolio includes patents for flooring installation and wall mounting systems, panel material compositions, surface treatment as well as board production, outdoor and stair tread technologies. Patents and patent applications for i4F's technologies have been granted and filed, respectively, in many countries worldwide. i4F's technologies and patented inventions are incorporated into the products of over 150 leading flooring manufacturers in the US and other countries, who are licensed by i4F. i4F's experienced technical team provides licensees with the technical designs and know-how needed to implement i4F's technologies on their products. i4F

markets its patented locking systems for use on SPC floor panels, among others, as the 3L TripleLock and Click4U locking systems and licenses the same to third parties.

14.    Plaintiff i4F is the owner of a vast patent portfolio, which includes the Asserted Patents.

15.    Plaintiff i4F is the owner by assignment of the Asserted Patents.

16.    The 3L TripleLock and Click4U locking systems are covered by the Locking Patents.

17.    Licensees of the 3L TripleLock and Click4U and, thus, the Locking Patents, are required to label each box of flooring panels or tiles having i4F's locking system with i4F L2C labels. The i4F L2C label indicates that i4F has authorized the box of panels for manufacture and sale under a valid licensing arrangement.

18.    Additionally, i4F's Locking Patent licensees mark their products with i4F's patents by including the following or similar language: "THESE PRODUCTS UTILIZE PROPRIETARY 3L TRIPLELOCK AND CLICK4U TECHNOLOGY patents: www.patents-i4f.com" or "PRODUCED UNDER LICENSE OF THE PATENTS LISTED at www.patents-i4f.com." The URLs www.patents-i4f.com and www.i4f.com/patents/ identify the Locking Patents.

19.    Defendant JRH is a Chinese manufacturer of PVC-based flooring materials, including SPC flooring planks and tiles:



Ex. A. (https://www.jrhflooring.com/col.jsp?id=113).

20.     SPC is a material that is a mixture of polyvinyl chloride (PVC) and a stone filler material, usually a stone dust or stone powder material, such as calcium carbonate or chalk.

21.     The SPC Accused Products are SPC covering panels and tiles that include an SPC substrate or core with a top layer applied to the top of the core.

22.     Defendant JRH has offered the SPC Accused Products for sale and sold them in the United States to and has imported the same into the United States.

23.     Defendant JRH also offers the SPC Accused Products for sale in the United States through the "Made-in-China" sales platform and Alibaba as shown below:



Ex.     B.     (https://jrhflooring.en.made-in-china.com/product/HEZURnLgFzrA/China-Wear-Resistant-4mm-5mm-6mm-7mm-Wood-Marbel-Grain-Spc-Vinyl-Plank-Flooring-Spc-Floor.html?pv_id=1jeu9ca7a0f7&faw_id=1jeu9meooc03&bv_id=1jeu9meop9eb&pbv_id=1jeu9c8s3277q).



| Product Name | SPC (Stone Plastic Composite) Flooring |
|---|---|
| Main series | Wood grain, Marble stone grain, Parquet, Herringbone,and etc. |
| Surface treatment | UV Coating(ultraviolet curing coating) with embossed surface |
| | (B/P wood grain surface, Matt, Crystal, Stone grain,EIR) embossed Or customized |
| Wood grain/color | Oak, Birch, Cherry, Hickory, Maple, Teak, Antique, Mojave, Walnut, Mahogany, Marble effect, Stone, White, Black, Grey or as required |
| Wear layer thickness | 0.2-0.8mm, Common is 0.3mm. |
| Rigid Core material | 100% virgin PVC powderand stone powder. |
| Thickness | 3.5-8mm |
| Size (L x W) | 184*1220mm, 203*1220, 240*1520mm, 240*1800mm, 600*300mm, 640*1280mm or Customized |
| Under layer (Back foam) | IXPE, EVA. |
| Click System | Unilin, Valinge, or as required. |
| Green rating | E0, formaldehyde-free. |
| Edge | Chamfer, Microchamferor Right angle. |
| Advantages | Eco friendly,Waterproof, Fireresistance, Anti-slip, Scratch resistant, Easy click install. |
| Certificate | CE, SGS, or apply for any certificates you need. |
| Application | Commercial building,Office, Hotel, Hall, Household. |
| MOQ | 600 Square Meters. |
| Delivery time | 15-25 days. |
| Payment method | T/T, L/C,Online payment or as negotiated. |

Ex.    C    (https://www.alibaba.com/product-detail/Custom-High-Quality-Waterproof-Wood-Grain_1601211126143.html?spm=a2700.shop_plgr.41413.1.40897121f6UX2k)



Ex. D.  (https://www.alibaba.com/product-detail/Factory-Price-Custom-High-Gloss-Marble_1601219938375.html?spm=a2700.shop_plgr.41413.32.43647121ZMHqIf).

24.      The SPC Accused Products sold by Defendant JRH and imported into the United States include an SPC core layer comprising PVC and calcium carbonate, a decorative film layer, a PVC wear layer, a UV coating and, in the case of decorative floor panels, also a click lock system:



SPC flooring is a sophisticated and innovative flooring solution that stands for Stone Plastic Composite.
As the name suggests, SPC flooring is made by blending natural limestone powder, polyvinyl chloride, and stabilizers.
The result is an incredibly sturdy and robust core layer that forms the backbone of this advanced flooring option.
The only flooring that can really compare to SPC in terms of robustness is solid wood flooring,
but at around twice the price is doesn't fall within the budget constrains that SPC flooring buyers often seek.

SPC flooring's unique composition gives it an unparalleled blend of strength,
durability, and aesthetic appeal.
Available in an array of designs and styles such as tile,
plank and herringbone, it's a perfect choice for homeowners seeking an affordable, yet
classy flooring solution.
Additionally, the advanced engineering behind SPC flooring also results in a product that
is ecofriendly.
The manufacturing process utilises recycled materials and creates less waste, contributing
to a smaller environmental footprint.
Such eco credentials puts SPC flooring in its own league against its alternatives.

**SPC FLOORING STRUCTURE**

Ex. A.

25.    Upon information and belief, to manufacture SPC flooring planks and, thus, the SPC Accused Products, Defendant JRH mixes PVC resin with calcium carbonate in amount of 15-75 wt. %, with at least one plasticizer, including Bis(2-ethylhexyl) terephthalate or DOTP (Dioctyl terephthalate).

26.    JRH extrudes the resulting mixture at elevated temperature and pressure to obtain a substrate or SPC core layer, molding the mixture to the desired shape of the core/substrate and laminates the substrate to the top layer through a hot-melt overlaying process without glue, which is standard in the industry:



Exs. C; D.

27.     Upon information and belief, the substrate is attached to the top layer at a temperature higher than the softening point of PVC but lower than the melting point of PVC, and the resultant panel is subsequently cool and, is thus, annealed.

28.     The top layer includes a transparent PVC wear layer, a textured top face, and decorative layer below the wear layer, and a UV top layer that is waterproof:




## PRODUCT ADVANTAGE



### Eco-friendly
Non-toxic and free from formaldehyde, a dangerous chemical used in many flooring products that can cause respiratory issues, irritate the eyes, nose, and throat, and effect healthy.



### Wear-resistance
SPC flooring is resistant to impacts, stains, scratches. The strong wear resistance makes it the preferred flooring for schools, shopping malls, and other places that have a high requirement of scratch-resistant.



### Fire Proof
SPC flooring has an excellent fire rating of B1 and does not produce suffocating harmful or toxic fumes in the event of an accident due to its Eco composition.



### East to install
SPC flooring can be easy to install with it's click.
Without any glue when installed only use a rule and a knife is enough.



### Anti-slippery
The wear layer of SPC flooring has special anti-slip properties, and compared with ordinary floor materials, you'll feel more astringent when there is water, and it is less likely to slip.



### Waterproof
As the main composition of SPC flooring is vinyl resin and stone powder, it's not hydrophilic. It will not be damaged even if it is soaked for a long time, and it will not be mildewed due to high humidity. It's perfect for business owners, pets, and water-prone areas.

Ex. C; *see also* Ex. A ("SPC FLOORING STRUCTURE").

29.    The SPC Accused Products that are floor panels may also be provided with an underlayment layer on the bottom of the SPC substrate / core.  *See* Exs. A-C.

30.    The SPC Accused Products are waterproof, fireproof, wear resistant and glueless. *See* Exs. A-D.

31.    Upon information and belief, Defendant Richie's is a retailer and importer of home finishing materials, including SPC wall panels and flooring.

32.    An October 9, 2025 Instagram® post from Defendant Richie's demonstrates its sale of SPC Accused Products:



https://www.instagram.com/reel/DPl35iCDSgn/?utm_source=ig_web_copy_link&igsh=MzRlO DBiNWFlZA== .

33.    Upon information and belief, Defendant Richie's purchases the SPC Accused Products manufactured by Defendant JRH and sells/offers to sell the same in the United States.

34.    Upon information and belief, the SPC Accused Products have been and are being imported into the United States by Defendants.

35.    The Material Patents cover various aspects of decorative panels/tiles, including SPC panels/tiles, and processes of producing the same.

36.    Defendants are not licensed or otherwise authorized by i4F to practice the technology of the Material Patents.

37.    Defendants' sale, offer for sale, and importation into the United States of the SPC Accused Products infringe at least claims 1 and 8 of the '918 Patent (the "Asserted '918 Claims"). SPC Accused Products that are floor panels infringe at least claims 1-4 and 6-11 of the '396 Patent (the "Asserted '396 Claims"), and claims 1-5, 8-10, 14, 17-19, and 21-24 of the '753 Patent (the "Asserted '753 Claims").

38.    Defendant JRH also manufactures and sells its Locking Accused Products for sale with i4F locking technology.

39.    JRH is not licensed to use i4F's patented 3L TripleLock and Click4U technologies, which are covered by the Locking Patents.

40.    Upon information and belief, JRH has sold and imported flooring planks including the 3L TripleLock and Click4U technologies.

41.    JRH's sale, offer for sale and/or importation of any flooring plank including i4F's 3L TripleLock and Click4U technologies infringes the Locking Patents.

42.    Photographs of a JRH SPC flooring plank including i4F's 3L TripleLock locking profile on the short side of the plank are shown below:



43.    Photographs of a JRH SPC flooring plank including i4F's angle locking profile on the long side of the plank are shown below:

  

44.    The combined angle profile on the long side with the 3L TripleLock drop-lock profile on the short side is marketed by i4F as Click4U.

45.    The Locking Accused Products are floor panels and tiles that include the 3L TripleLock and Click4U locking systems and have a centrally located core provided with an upper side and a lower side:   *See* '336 Patent, claim 1; '046 Patent, claims 1, 24.

46.    The Locking Accused Products include a first resilient coupling part and second resilient coupling part connected respectively to opposite edges of the core, as recited in claim 1 of the '336 Patent.



47.    The first coupling part of the Locking Accused Products includes a single upward tongue, an upward flank lying at a distance from the upward tongue and an upward groove formed between the upward tongue and the upward flank, as recited in claim 1 of the '336 Patent:



48.    The Locking Accused Products also include at least a part of a side of the upward tongue facing toward the upward flank that extends in a direction of a normal of an upper side of a core, and at least a part of a side of the upward tongue facing toward the upward flank that forms an upward aligning edge for the purpose of coupling a first coupling part to a second coupling part of an adjacent floor panel, as recited in claim 1 of the '336 Patent:



49.    3L TripleLock also includes at least a part of a side of the upward tongue facing away from the upward flank is provided with a locking element which is connected substantially rigidly to the upward tongue and adapted for co-action with a second locking element of a second coupling part of an adjacent floor panel:



50.    The second coupling part of the Locking Accused Products comprises a single downward tongue, at least one downward flank lying at a distance from the downward tongue, and a single downward groove formed between the downward tongue and the downward flank, as recited in claim 1 of the '336 Patent:



51.    The Locking Accused Products further include at least a part of a side of the downward tongue facing toward the downward flank extends in the direction of the normal of the lower side of the core, and at least a part of a side of the downward tongue facing away from the downward flank forms a downward aligning edge for the purpose of coupling the second coupling part to a first coupling part of an adjacent floor panel, as recited in claim 1 of the '336 Patent:



52.     The Locking Accused Products also include a downward flank provided with a second locking element which is connected substantially rigidly to the downward flank and adapted for co-action with a first locking element of a first coupling part of an adjacent floor panel, wherein the upward groove is adapted to receive at least a part of a downward tongue of an adjacent panel, and wherein the downward groove is adapted to receive at least a part of an upward tongue of an adjacent panel, as recited in claim 1 of the '336 Patent:



53.     The Locking Accused Products also have a core provided with a first pair of edges, having a first edge with a sideward tongue extending in a direction substantially parallel to the upper side of the panel, with a bottom back region of the tongue being configured as a bearing region, wherein the bottom back region is located closer to the level of the upper side of the panel than a lowest part of the bottom front region and an opposite, second edge having a recess for accommodating at least part of a sideward tongue of a second panel, wherein the recess is defined

by an upper lip and a lower lip, said lower lip being provided with an upwardly protruding shoulder facing the bearing region of the sideward tongue, as recited in claims 1 and 24 of the '046 Patent:



54.    The sideward tongue is designed such that locking takes place by an introduction movement into the recess of a sideward tongue of the second panel and an angling down movement about an axis parallel to the first edge, as a result of which a top side of the sideward tongue will engage the upper lip and the bearing region of the sideward tongue will be supported by and/or facing the shoulder of the lower lip leading to locking of the panel and the second panel at the first and second edges in both a horizontal direction and a vertical direction, as recited in claims 1 and 24 of the '046 Patent:



55.    The Locking Accused Products also include a second pair of opposite edges comprising a third edge comprising a single upward tongue, at least one upward flank lying at a distance from the upward tongue and a single upward groove formed between the upward tongue and the upward flank, and wherein at least a part of a side of the upward tongue facing away from

the upward flank comprises a substantially rigid first locking element, and a fourth edge comprising a single downward tongue, at least one downward flank lying at a distance from the downward tongue, and a single downward groove formed between the downward tongue and the downward flank, and wherein the downward flank comprises a substantially rigid, second locking element adapted for co-action with a first rigid locking element of a third edge of a third panel, as recited in claims 1 and 24 of the '046 Patent:



56.    The third and fourth edges of such panels are designed such that locking takes place during angling down of the second panel at a first edge of the second panel to a second edge of the panel, wherein the fourth edge of the second panel makes a scissoring movement toward the third edge of the third panel, or during coupling of the second panel at a first edge to a second edge of the panel, such that the downward tongue of the fourth edge of the second panel will be forced into the upward groove of the third edge of the third panel and the upward tongue of the third panel will be forced into the downward groove of the second panel, by deformation of the third edge and/ or the fourth edge, leading to locking of adjacent panels at the third and fourth edges in both the horizontal direction and the vertical direction, as recited in claims 1 and 24 of the '046 Patent.

57.    The Locking Accused Products include at least a part of a side of the upward tongue facing toward the upward flank is inclined toward the upward flank and extends in the direction of the normal of the upper side of the core, and wherein at least a part of a side of the downward

tongue facing toward the downward flank is inclined toward the downward flank and extends in the direction of the normal of the lower side of the core, as recited in claims 1 and 24 of the '046 Patent:



58.    The Locking Accused Products are installed by inserting a sideward tongue of a first edge of a second panel in an inclined position into a recess of a second edge of the first panel, angling down the second panel with respect to the first panel, until both panels are situated in the same plane, inserting a sideward tongue of a first edge of a third panel in an inclined position into the recess of the second edge of the first panel, and angling down the third panel with respect to the first panel and the second panel, until the panels are situated in the same plane, wherein a downward tongue of a fourth edge of the third panel will be inserted into an upward groove of a third edge of the second panel by guiding the downward tongue of the fourth edge of the third panel along an aligning edge formed on an upward flank of the third edge of the second panel that defines the upward groove of the third edge of the second panel, and wherein an upward tongue of the third edge of the second panel will snap into a downward groove of the fourth edge of the third panel, leading to locking of the third panel with respect to the first panel at the first and second edges and with respect to the second panel at the third and fourth edges in both a horizontal direction and a vertical direction. *See* '046 Patent, claim 47.  The materials used to construct any

such panels will result in the snapping action required by method claim 47 when downward pressure, as required by the installation instructions, is applied.

59.     On January 25, 2026, Plaintiff sent a demand letter to Defendant JRH identifying its infringement of the Asserted Patents, demanding JRH cease and desist from continuing said infringement, among other things.  A copy of that letter is attached hereto as Exhibit E.

60.     JRH did not respond to Plaintiff's demand letter.

61.     In view of the foregoing, Defendant JRH's infringement of the Asserted Patents is willful.

62.     Upon service of this Complaint, Defendant Richie's will have actual knowledge of the Asserted Patents.

63.     Accordingly, Defendant Richie's continued infringement of at least the Material Patents will be willful.

### COUNT I: INFRINGEMENT OF U.S. PATENT NO. 11,091,918 AGAINST DEFENDANTS JRH AND RICHIE'S

64.     i4F repeats and re-alleges the averments contained in all preceding paragraphs of this Complaint as if fully stated herein.

65.     Defendants import the SPC Accused Products, manufactured by the processes recited in the Asserted '918 claims, into the United States and offer to sell and sell the same in the United States.

66.     Defendant JRH practices each and every element of the Asserted '918 Claims.

67.     The SPC Accused Products are SPC panels or tiles manufactured by JRH.  '918 Patent (claims 1, 8); *see also, e.g.,* Ex. A-D.

68.     The SPC Accused Products infringe claim 1 of the '918 Patent as follows:

| Claim Language | Accused Product |
|---|---|
| Process of producing covering panels including floor panels, wall panels or ceiling panels, each covering panel comprising a top layer and at least one substrate, | *See, e.g., supra*, ¶¶ 19, 23; Ex. A-D. |
| whereby said at least one substrate comprises a synthetic material and a filler material; | *See, e.g., supra*, ¶¶ 23, Ex. A ("SPC flooring is made by blending natural limestone powder, polyvinyl chloride . . . ."); Ex. B ("100% virgin PVC powder and stone powder"); Ex. C (same); Ex. D (SPC Wall Panel includes "wood powders, bamboo powder PVC resin powder, light calcium owder and other auxiliary materials.") |
| the method comprising the steps of: mixing the synthetic material and the filler material, thereby obtaining a mixture; | *See, e.g., supra*, ¶ 23, Ex. A ("SPC flooring is made by blending natural limestone powder, polyvinyl chloride . . . ."); Ex. B ("100% virgin PVC powder and stone powder"); Ex. C ("100% virgin PVC powder and stone powder"); Ex. D (SPC Wall Panel includes "wood powders, bamboo powder PVC resin powder, light calcium owder and other auxiliary materials.") |
| extruding said mixture, thereby obtaining the substrate; | *See, e.g., supra,* ¶ 26, Exs C and D (showing extrusion line). |
| optionally, laminating the substrate to the top layer; | *See, e.g., supra*, ¶24; Ex. A (showing layers of SPC panel). |
| thereby obtaining the covering panel; | *See, e.g., supra*, ¶¶ 19, 23; Ex. A-D. |
| annealing the covering panel; | Upon information and belief, the covering panel is heated during the lamination process above the softening point of PVC and subsequently cooled for a period of time, thereby annealing the panels. *See, e.g., supra* ¶¶ 26-27. |
| wherein said filler material is mixed with said synthetic material in an amount from 15 to 75 wt. % based on a total weight of said mixture | Independent lab testing confirms filler material of calcium carbonate in the range of 15 to 75 wt. % |
| and whereby said substrate is attached to said top layer at a temperature higher than a softening point but lower than a melt temperature of a principal polymer comprised in said substrate. | Upon information and belief, the covering panel is heated during the lamination process above the softening point of PVC but lower than its melting point. *See, e.g., supra* ¶¶ 26-27. |

69.     Claim 8 is also infringed for the same reasons noted in paragraph 68 above.

70.     The activities of Defendants in using, importing, selling and/or offering to sell the SPC Accused Products constitutes infringement of the Asserted '918 Claims under 35 U.S.C § 271(g).

71.     Defendant JRH's conduct in urging or encouraging third parties, including Defendant Richie's, to import the SPC Accused Products into the United States and/or to sell or offer to sell the same in the United States, knowing or being willfully blind to the fact that said third parties' conduct infringes the Asserted '918 Claims constitutes indirect infringement under 35 U.S.C § 271(b).

72.     At least Defendant JRH's infringement is willful.

73.     Upon service of this Complaint, Defendant Richie's continued infringement will be willful.

74.     i4F has been irreparably damaged and will continue to be irreparably damaged by reason of Defendants' infringement of the '918 Patent unless this Court restrains their infringing conduct.  i4F is without an adequate remedy at law.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 11,794,396 AGAINST DEFENDANTS JRH AND RICHIE'S

75.     i4F repeats and re-alleges the averments contained in all preceding paragraphs of this Complaint as if fully stated herein.

76.     Defendants import the SPC Accused Products that are floor panels (the "SPC Flooring Accused Products") into the United States and offer to sell and sell the same in the United States.

77.     The SPC Flooring Accused Products practice each and every element of the Asserted '396 Claims.

78.     The SPC Flooring Accused Products infringe claim 1 of the '396 Patent as follows:

| Claim Language | Accused Product / Evidence of Infringement |
| --- | --- |
| Composite flooring material segments, each composite flooring material segment comprising: | *See, e.g., supra*, ¶¶ 19, 23; Ex. A-C. |
| (i) a flooring base layer comprising a mixture of PVC resin and calcium carbonate, wherein said mixture is free of glue, and | *See, e.g., supra*, ¶¶ 23, Ex. A (showing panel layering and noting "SPC flooring is made by blending natural limestone powder, polyvinyl chloride . . . ."); Ex. B ("100% virgin PVC powder and stone powder"); Ex. C (same); Ex. D (SPC Wall Panel includes "wood powders, bamboo powder PVC resin powder, light calcium owder and other auxiliary materials."). Moreover, upon information and belief, no glue is used in the manufacturing of the base layer. *See, e.g., supra*, ¶ 26 |
| wherein said flooring base layer is a resultant of extrusion of the mixture at elevated temperature and pressure, mold-forming the extruded mixture into said flooring base layer, and cooling said flooring base layer; | *See, e.g., supra*, ¶¶ 26-27, Ex. C (showing extrusion line and warehouse storage of finished and semi-finished products); |
| (ii) a waterproof flooring face layer comprising a decorative face sublayer and a wearing face sublayer fused onto a top face of said decorative face sublayer, | *See, e.g., supra,* ¶¶ 24, 26, Ex. A (showing SPC floor structure; ¶ 28, Exs. B-C (both noting "waterproof") |
| where said flooring face layer is textured and fused onto a top face of said flooring base layer by hot-melt overlaying of said layers; and | *See, e.g., supra,* ¶¶ 24, 26-27, Ex. A (showing SPC floor structure), Exs. B and C (both noting "embossed surface"); Ex. C (showing manufacturing process and noting) |
| (iii) a cured waterproof flooring coating layer, applied on top of said flooring face layer, | *See, e.g., supra,* ¶¶ 24, 26, 28 Ex. A (showing SPC floor structure; Exs. B-C (both noting "waterproof" and "ultraviolet curing coating"); |
| wherein said flooring coating layer is the resultant of coating said flooring face layer with a UV-curing plastic resin and UV | *See, e.g., supra,* ¶¶ 24, 26, 28 Ex. A (showing SPC floor structure; Exs. B-C (both noting |

| Claim Language | Accused Product / Evidence of Infringement |
|---|---|
| curing said coating of UV-curing plastic resin by exposure to UV light. | "waterproof" and "ultraviolet curing coating"); Ex. C (showing UV curing line). |

79.     The SPC Flooring Accused Products are free of compressed cellulose material. '396 Patent (claim 2); *see also, e.g,* Exs. A-C.

80.     The SPC base layer is waterproof, the decorative sublayer is a PVC decorative film with a printed and colored design thereon, the wearing layer is a transparent PVC polymer film, and the UV coating layer is transparent. '396 Patent (claims 3, 6-11); *see also, e.g,* Exs. A-C.

81.     The activities of Defendants in importing into or selling and/or offering to sell the SPC Flooring Accused Products in the United States constitutes infringement of the Asserted '396 Claims under 35 U.S.C § 271(a).

82.     Defendant JRH's conduct in urging or encouraging third parties, including Defendant Richie's, to import the SPC Flooring Accused Products into the United States and/or to sell or offer to sell the same in the United States, knowing or being willfully blind to the fact that said third parties' conduct infringes the Asserted '396 Claims constitutes indirect infringement under 35 U.S.C § 271(b).

83.     At least Defendant JRH's infringement is willful.

84.     Upon service of this Complaint, Defendant Richie's continued infringement will be willful.

85.     i4F has been irreparably damaged and will continue to be irreparably damaged by reason of Defendants' infringement of the '396 Patent unless this Court restrains their infringing conduct.  i4F is without an adequate remedy at law.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 12,427,753
## AGAINST DEFENDANTS JRH AND RICHIE'S

86.    i4F repeats and re-alleges the averments contained in all preceding paragraphs of this Complaint as if fully stated herein.

87.    Defendants import the SPC Flooring Accused Products into the United States and offer to sell and sell the same in the United States.

88.    The SPC Flooring Accused Products practice each and every element of the Asserted '753 Claims.

89.    The SPC Flooring Accused Products infringe claim 1 of the '753 Patent as follows:

| Claim Language | Accused Product / Evidence of Infringement |
|---|---|
| A composite flooring segment having a nominal top and bottom direction, comprising: | *See, e.g., supra*, ¶¶ 19, 23; Ex. A-C. |
| (i) a flooring base layer comprising a mixture of PVC resin and calcium carbonate, wherein said flooring base layer is free of glue; | *See, e.g., supra*, ¶¶ 23, Ex. A (showing panel layering and noting "SPC flooring is made by blending natural limestone powder, polyvinyl chloride . . . ."); Ex. B ("100% virgin PVC powder and stone powder"); Ex. C (same); Ex. D (SPC Wall Panel includes "wood powders, bamboo powder PVC resin powder, light calcium owder and other auxiliary materials."). Moreover, upon information and belief, no glue is used in the manufacturing of the base layer. *See, e.g., supra*, ¶ 26 |
| (ii) a flooring face layer comprising a decorative face sublayer and a wearing face sublayer applied on top of said decorative face sublayer; | *See, e.g., supra*, ¶¶ 24, 26, Ex. A (showing SPC floor structure) |
| wherein said wearing face sublayer is fused onto the decorative face sublayer by hot-melt overlaying, | *See, e.g., supra*, ¶¶ 24, 26, Ex. A (showing SPC floor structure) |
| wherein said flooring face layer is fused without adhesives onto a top face of said flooring base layer by hot-melt overlaying, | *See, e.g., supra*, ¶¶ 24, 26-28, 30, Ex. A (showing SPC floor structure) |

| Claim Language | Accused Product / Evidence of Infringement |
|---|---|
| wherein said decorative face sublayer has a printed pattern or image; | *See, e.g., supra*, ¶¶ 24, 28, Ex. A (showing SPC floor structure), Ex. B (noting "wood grain" pattern and "B/P wood grain surface"); Ex. C ("B/P wood grain surface") |
| wherein said flooring face layer has a decoratively textured surface, and wherein said decoratively textured surface defines a textured top surface of said flooring segment; and | *See, e.g.,* ¶¶ 24, 28, Ex. A (showing SPC floor structure), Exs. B and C (both noting "embossed surface") |
| (iii) a flooring coating layer, applied on top of said flooring face layer. | *See, e.g., supra,* ¶¶ 24, 26, 28 Ex. A (showing SPC floor structure; Exs. B-C (both noting "waterproof" and "ultraviolet curing coating"); Ex. C (showing UV curing line). |

90.     The decorative sublayer has a printed pattern or image thereon, and the top of the face is decoratively textured with the texture being at least partially complementary to the pattern or image of the decorative sublayer.  '753 Patent (1, 18); *see also, e.g.,* Exs. A-C.

91.     The SPC Flooring Accused Products also have a flooring coating layer comprising a UV-cured resin.  '753 Patent (claim 2); *see also, e.g.,* Exs. A-C.

92.     The SPC Flooring Accused Products are also provided with an underlayment layer on the bottom of the SPC base layer / core.  '753 Patent (claim 4); *see also, e.g.,* Exs. A-C.

93.     The SPC base layer and the flooring face layer are waterproof, the decorative sublayer is a colored PVC decorative film with a printed pattern or image thereon, the wearing layer is a transparent PVC polymer film that is wear-resistant, and the UV coating layer is transparent.  '753 Patent (claims 3, 5, 8-10, 23-24); *see also, e.g.,* Exs. A-C.

94.     The SPC Flooring Accused Products are free of compressed cellulose.  '753 Patent (claim 14); *see also, e.g.,* Exs. A-C.

95.    The UV coating layer is applied as a film. '753 Patent (claim 19); *see also, e.g.,* Exs. A-C.

96.    The SPC Flooring Accused Products include coupling or installation profiles for installation and locking with adjacent panels / flooring segments. '753 Patent (claims 21-22); *see also, e.g.,* Exs. A-C.

97.    The activities of Defendants in using, importing, selling and/or offering to sell the Accused Products constitutes infringement of the Asserted '753 Claims under 35 U.S.C § 271(a).

98.    Defendant JRH's conduct in urging or encouraging third parties, including Defendant Richie's, to import the SPC Flooring Accused Products into the United States and/or to sell or offer to sell the same in the United States, knowing or being willfully blind to the fact that said third parties' conduct infringes the Asserted '753 Claims constitutes indirect infringement under 35 U.S.C § 271(b).

99.    Defendant JRH's infringement is willful.

100.    Upon service of this Complaint, Defendant Richie's continued infringement will be willful.

101.    i4F has been irreparably damaged and will continue to be irreparably damaged by reason of Defendants' infringement of the '753 Patent unless this Court restrains their infringing conduct. i4F is without an adequate remedy at law.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 8,978,336 AGAINST DEFENDANT JRH

102.    i4F repeats and re-alleges the averments contained in all preceding paragraphs of this Complaint as if fully stated herein.

103. Defendant JRH offers to sell and sells the Locking Accused Products and imports the same into the United States including the features described and shown above at paragraphs 42-58.

104. Thus, the Locking Accused Products infringe at least claim 1 of the '336 Patent.

105. Upon information and belief, the Locking Accused Products also practice each and every limitation of claims 2-4, 6-13, 17, 19-25, 27, 30, 35, 39, 40, 41, 42, 43 of the '336 Patent (collectively, with claim 1 of the '336 Patent, the "Asserted '336 Claims").

106. The activities of JRH in offering to sell, selling and/or importing the Locking Accused Products constitutes infringement of the Asserted '336 Claims under 35 U.S.C § 271(a).

107. JRH's infringement is willful.

108. i4F has been irreparably damaged and will continue to be irreparably damaged by reason of Defendant JRH's infringement of the '336 Patent unless this Court restrains their infringing conduct.  i4F is without an adequate remedy at law.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 10,267,046
## AGAINST DEFENDANT JRH

109. i4F repeats and re-alleges the averments contained in all preceding paragraphs of this Complaint as if fully stated herein.

110. Defendant JRH offers to sell and sells the Locking Accused Products and imports the same into the United States including the features described and shown above at paragraphs 42-58.

111. Thus, the Locking Accused Products infringe at least claims 1 and 24 of the '046 Patent.

112.     Upon information and belief, the Locking Accused Products also practice each and every limitation of claims 3-9, 11, 13-16, 20, 23, 26-32, 34, 36-39, 43 and 46 of the '046 Patent (collectively, with claims 1 and 24 of the '046 Patent, the "Asserted '046 Claims").

113.     The activities of JRH in offering to sell, selling and/or importing the Locking Accused Products constitute infringement of the Asserted '046 Claims under 35 U.S.C § 271(a).

114.     JRH's infringement is willful.

115.     i4F has been irreparably damaged and will continue to be irreparably damaged by reason of Defendant JRH's infringement of the '046 Patent unless this Court restrains its infringing conduct.  i4F is without an adequate remedy at law.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury for all issues triable by a jury.

**WHEREFORE**, i4F prays:

A.     that Defendants, their officers, employees, agents, and those persons in active participation with them be permanently enjoined from infringing the Asserted Patents;

B.     that judgment be entered finding that Defendants infringe the Asserted Patents;

C.     that Defendants be ordered to pay damages to i4F pursuant to 35 U.S.C. § 284 in an amount adequate to compensate i4F for the infringement, but not less than a reasonable royalty, including interest from the dates of infringement, resulting from Defendants' infringement of the Asserted Patents;

D.     that Defendants infringement be deemed willful and, as a result, that Defendants be ordered to pay i4F treble damages pursuant to 35 U.S.C. § 284;

E.      that i4F be awarded its costs of this action and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285; and

F.      that i4F be awarded such further relief as this Court may deem just and proper.

## LOCAL CIVIL RULE 11.2 CERTIFICATION

Pursuant to Local Rule 11.2, i4F Licensing N.V., by its undersigned counsel, hereby certifies that the matters listed below are related to the matter in controversy because they involve the same plaintiff and some or all of the same patents:

- I4F Licensing N.V. v. Changzhou Subili New Materials Co., Ltd. et al., Case 2:26-cv-04985-RAO (C.D. Ca.)
- i4F Licensing N.V. v. Haining Mingyuan Decorative Materials Co. LTD et al. Case 2:26-cv-04904-MAR (C.D. Ca.)
- i4F Licensing N.V. v. Hangzhou Hanhent Industries Co Ltd et al. Case 3:26-cv-05427-TMC (W.D. Wash.)

i4F Licensing N.V. by its undersigned counsel, hereby certifies that to the best of the undersigned's knowledge, the matter in controversy is not the subject of any other action pending in any court or any arbitration or administrative proceeding.

## LOCAL CIVIL RULE 201.1 CERTIFICATION

Pursuant to Local Rule 201.1, i4F Licensing N.V., by its undersigned counsel, hereby certifies that this action seeks, *inter alia*, injunctive relief and therefore this action is not appropriate for compulsory arbitration.

Date: May 21, 2026                  Respectfully submitted,

 /s/ Anthony J. DiMarino, III
Anthony J. DiMarino, III, Esquire
**DiMarino, Lehrer & Collazo, P.C.**
52 Haddonfield Berlin Road, Suite 1000
Cherry Hill, NJ 08034
Phone: (856) 888-1200
ajd@dimarinolaw.com

Counsel for i4F Licensing N.V.

Page 31 of 31